[Civ. No. 7995. First Appellate District, Division Two.—November 6, 1931.]

MERRICK & RUDDICK, INC. (a Corporation), Respondent, v. TITLE INSURANCE COMPANY (a Corporation) et al., Defendants; SECURITY TRUST & SAVINGS BANK (a Corporation) et al., Appellants.

Schweitzer & Hutton and H. F. Clary for Appellants.

Gesner Williams and Joseph Harris Brewer for Respondent.

SPENCE, J.—Plaintiff brought this action against defendant Security Trust and Savings Bank, the trustee, and certain other defendants who were beneficiaries under a

declaration of trust and its supplements seeking an accounting of alleged profits claimed to be due to plaintiff as selling agent of the property involved. After a reference for the purpose of an accounting, judgment was entered in favor of plaintiff in the sum of $18,209.06, together with interest. From this judgment defendants appeal.

In 1923 Harry Merrick, the vice-president of Sunday, Merrick & Ruddick, Inc., had an option on a large tract of land. He negotiated with the appellant beneficiaries for the purchase and subdivision of the trust and the negotiations culminated in the original declaration of trust. The purchase of the tract was consummated by a loan from the Title Insurance & Trust Company and by the money advanced by the appellant beneficiaries. The property was conveyed to the appellant trustee for the purpose of subdivision and sale and Sunday, Merrick & Ruddick, Inc., was appointed selling agent to direct the sales for a period of one year. The original declaration of trust dated March 9, 1923, provided in paragraph III thereof, that the proceeds of the sales should be distributed "in the following order of priority": 1. To the payment of taxes, assessments and other expenses in the care and maintenance of the trust property. 2. To the payment of the compensation of the trustee as therein provided. 3. "A sum equal to twenty per cent (20%) of all sales made by the said Selling Agent during a period of one year from the date hereof, but not otherwise, shall be paid to said Selling Agent to cover its commission and selling costs, only, however, if the property is sold by it at retail, that is to say, a subdivision." 4. Such sums as were authorized by the beneficiaries for the development and improvement of the property. 5. The sums set forth in a schedule of release prices to be paid to the Title Insurance & Trust Company. 6. "All of the balance shall be paid to the beneficiaries until they have received the entire sum of money paid in by them to the trustee for the purposes of this trust, plus interest thereon at six per cent (6%) per annum from the date of payment until repaid, and a sum equal to fifty per cent (50%) of the amount paid in by them in addition thereto, unless the beneficiaries direct the trustee to hold and apply such funds to the improvement of said tract, in which event such money shall be expended by the trustee for such improvements but such expenses shall not be

charged against the beneficiaries as payments to them, or any of them, of the moneys to which they are entitled under the terms hereof.''

Then follows this paragraph, ''After the selling agent has been paid its commission as aforesaid, and the beneficiaries have been paid the amounts above provided to be paid to them and the said tract has been fully improved, then all remaining money shall be divided equally and one-half thereof shall be paid to the beneficiaries and the other one-half to the selling agent, provided, however, that the said selling agent shall only be entitled to moneys arising out of the sale of lots actually sold by it during the period of one year from the date hereof, it being specifically understood that at the expiration of said year all interest of the selling agent in and to this trust and in and to the property covered hereby shall *ipso facto* cease and determine except as to its interest in the proceeds of the lots which it has actually sold during said period of one year.'' The termination of the trust was provided for as follows: ''This trust shall, unless otherwise terminated, continue to and until the sale and disposition in fee of all the property subject thereto and the distribution of all proceeds thereof, in accordance with the terms hereof, or until the expiration of twenty-five years, whichever event shall happen first.''

Thereafter the improvement and subdivision of the property proceeded and sales were made by the selling agent. Before the expiration of the year the selling agent requested an extension of the term and an increase of its commission and on November 9, 1923, the parties executed a supplemental declaration of trust. It provided, among other things, ''That the said Selling Agent shall be and is entitled to twenty-five per cent (25%) of the selling price of all lots sold by it in Tract No. 5956, in lieu of twenty per cent (20%) as fixed by Subdivision 3 of Paragraph III of said Declaration of Trust, it being understood that out of said twenty-five per cent (25%) the said Selling Agent is to pay all of its selling expenses, including all advertising and publicity costs. . . . It is understood and agreed that the period in which said Selling Agent was entitled to direct the sale of the said real estate; that is to say one year from and after the date of said original Declaration of Trust, is hereby extended to a period of two years from the date of said

Declaration of Trust; that is to say, until the 9th day of March, 1925.''

After the incorporation of respondent Merrick & Ruddick, Inc., the original selling agent sold and transferred all of its assets to respondent, which sale was subject, however, to a prior partial assignment of its interest in the declaration of trust to James M. Canterbury. The interest of James M. Canterbury was subsequently assigned to one of the appellants, but the foregoing assignments other than that by the original selling agent to respondent are immaterial for the purpose of this discussion. Respondent requested that it be substituted as selling agent and further requested a continuation of the selling agency after the date then fixed for its termination, to wit—March 9, 1925. Accordingly, on June 28, 1924, a second supplemental declaration of trust was executed by the parties, respondent, however, being substituted for the original selling agent. This document provided, among other things, as follows: ''The selling agent is hereby authorized to sell the said property as shown by recorded subdivision maps, or by said plan or lay-out, and in the event that it sells, between the date hereof and the 9th day of March, 1925, sufficient of said property so that on the 9th day of March, 1925, there are in the hands of the trustee contracts in conformity with the provisions of said Trust No. 5500 and not in default and which are executed by *bona fide* purchasers and which cover lots not under contract at the date hereof, in the principal sum or amount of one hundred thousand ($100,000.00) dollars, minus such cash sales as have been made between the date hereof and the said 9th day of March, 1925, then the said selling agent shall be entitled to direct sales under the terms of said trust until the 9th day of March, 1926; and in the event that the said selling agent is entitled to said extension of time and if, during the period from March 9, 1925, to March 9, 1926, said selling agent sells sufficient property so that on the last-mentioned date there are in the hands of the trustee similar contracts not in default executed by *bona fide* purchasers and covering lots or parcels which had not been sold on March 9, 1925, of the total selling price of two hundred thousand ($200,000.00) dollars, minus such cash sales as have been made between March 9, 1925, and March 9, 1926, then the said selling agent shall be entitled to direct sales

for a further period of one year expiring on the 9th day of March, 1927, at which time all their rights under said trust and in and to the trust estate shall wholly cease and end.

''Time is made strictly of the essence of the above paragraph, and unless the said contracts above specified are in the hands of the trustee in the principal amounts above specified, at the specified dates, then the rights of the selling agent hereunder shall in each case *ipso facto* cease and terminate.''

On March 5, 1925, respondent's time to obtain contracts totaling $100,000 was extended to July 9, 1925, and respondent apparently produced the required contracts within the time as extended. However, it was unable prior to March 9, 1926, to obtain additional contracts in the amount required and by the terms of said second supplemental declaration of trust as well as the express declarations of the parties the selling agency terminated. At that time about 40 per cent of the property had been sold. It is conceded that all commissions provided for in these instruments totaling approximately $150,000 have been paid to respondent, but respondent brought this action for an accounting of additional money claimed to be due under the paragraph following subdivision 6 of paragraph III of the original declaration of trust above set forth.

Throughout the trial and upon this appeal appellants have contended that respondent was not entitled to an accounting nor to judgment in any amount, as respondent's rights under the trust and in and to the trust estate had ceased and terminated by the agreement of the parties. In other words, appellants take the position that by the second amended declaration of trust respondent, in consideration of its substitution as sales agent upon the commission specified and the promise to extend its term, agreed that all of its interest in the trust should cease and terminate at the expiration of its term as selling agent. If appellants are correct in this contention respondent would be entitled only to the commissions earned, all of which have been paid. Both appellants and respondent contend that the instruments are clear and unambiguous but the varying construction placed upon these instruments by the parties are diametrically opposed. At the expense of repetition of some of the salient features we shall proceed to a further con-

sideration of the terms of the declaration of trust and its supplements.

Under the original declaration of trust, respondent's predecessor in interest was designated as selling agent to direct the sales of the property during the first year at prices not less than those specified on a minimum schedule to be agreed upon. The selling agent under subdivision 3 of paragraph III was to be paid a commission of twenty per cent on all sales made by it during the year. The payment of this commission was given priority over certain other payments as above stated. Then under the paragraph following subdivision 6 of said paragraph III "all remaining money" after the selling agent's commissions had been paid and after the amount specified in subdivision 6 had been paid to the beneficiaries and after the tract had been fully improved, was to be divided between the beneficiaries and the selling agent. It was "provided, however, that the said selling agent, shall only be entitled to moneys arising out of the sale of the lots actually sold by it during the period of one year from the date hereof, it being specifically understood that after the expiration of said year all interest of the selling agent in and to this trust and in and to the property covered hereby shall *ipso facto* cease and determine except as to its interest in the proceeds of the lots which it has actually sold during said period of one year".

We may pause to observe that although at first blush there may be no apparent ambiguity in the above-mentioned provisions, it is at least obvious that their practical application would be fraught with difficulties. What was the "remaining money" to which the parties had reference? Did they refer to cash on hand at the end of the selling agent's term of one year or after all payments given priority in the preceding six subdivisions of paragraph III had been made or upon the termination of the trust? If the term "remaining money" was used synonymously with "profits" (which latter term was not employed in the declaration of trust) then upon what basis were the profits on the sales of a portion of the subdivision made by the selling agent during the first year of this 25-year trust to be determined? We may further observe that all of the interest of the selling agent in the trust and trust estate was to terminate at the end of one year "except as to its

interest in the proceeds of the lots which it had actually sold during said period of one year''.

Turning to the supplemental declaration of trust executed on November 9, 1923, we find that the period in which said selling agent *"was entitled to direct the sale of the said real estate"* was extended to March 9, 1925, and that its commissions were increased from twenty per cent to twenty-five per cent. This instrument contained no other reference to the compensation of the selling agent. It did not expressly extend the provisions of the paragraph following subdivision 6 of paragraph III of the original declaration of trust and that paragraph remained limited by its terms ''to moneys arising out of the sales of lots actually sold by it (the selling agent) during the period of one year'' unless an extension thereof may be implied.

Referring now to the second supplemental declaration of trust dated June 28, 1924, we find a recital of the assignment by the original selling agent to respondent and the agreement of all parties to respondent's substitution as such selling agent. We find the further recital that the previous supplemental declaration had extended the period of time in which the selling agent *"was entitled to direct the sale of said real estate"* until the ninth day of March, 1925, and that the parties desired to amend the ''Declaration and said Supplemental Declaration in certain particulars.'' Then follows an agreement to extend the time in which the selling agent would be *"entitled to direct sales"* to March 9, 1926, in the event that sufficient sales were made prior to March 5, 1925, and a further agreement to again extend the time in which the selling agent would be *"entitled to direct sales"* to March 9, 1927, in the event that sufficient sales were made prior to March 9, 1926. This paragraph ended with the words *"at which time all their rights under said trust and in and to the trust estate shall wholly cease and end."*

The paragraph following read ''Time is made strictly the essence of the above paragraph and unless the said contracts above specified are in the hands of the Trustee in the principal amounts above specified, at the specified dates, *then the rights of the Selling Agent hereunder shall in each case ipso facto cease and terminate."*

We are of the opinion that appellants' contention that respondent's rights under the paragraph following subdivi-

sion 6 of paragraph III of the original declaration of trust have terminated by virtue of the provisions of the second supplemental declaration of trust must be sustained. The language of that instrument can be given no other construction. The broad provisions therein contained to the effect that "all the rights under said trust and in and to the trust estate shall wholly cease and end" and that in the event of failure to make the specified sales at the specified time "the rights of the Selling Agent hereunder shall in each case *ipso facto* cease and terminate" are not qualified in any manner. Unlike the provisions of the paragraph following subdivision 6 of paragraph III of the original declaration it was here agreed that all rights would be terminated without any exception.

Counsel for respondent contends that such construction is unreasonable but we do not believe that it is. Respondent and its predecessor obtained extensions of their term as selling agents and were entitled to large commissions on the gross sales made during that term as extended. They acted as selling agents for three years, earning a total of approximately $150,000 in commissions, and under their agreement were entitled to act for another year in the event that a specified amount of sales were made. It is not unreasonable to assume that respondent was willing to waive any right which it had to participate in the "remaining money" in consideration of appellants' agreement to allow such extensions and to substitute respondent as selling agent at the commissions specified. In our opinion this is precisely what respondent agreed to do, for the language of the second supplemental declaration of trust with respect to the termination of its rights is clear and explicit and must govern in the construction of the instrument. (Civ. Code, sec. 1638.) From what has been said it follows that respondent was not entitled to an accounting of the "remaining money".

The judgment is reversed.

Nourse, P. J., and Sturtevant, J., concurred.